UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL DEFEUDIS,                  )
         Plaintiff,        )
                                   )
         v.                )      C.A. No. 10-12214-GAO
                                   )
NANCY DEFEUDIS, ET AL,             )
         Defendants        )

MEMORANDUM AND ORDER FOR DISMISSAL

O'TOOLE, D.J.

For the reasons stated below, this action is <u>DISMISSED</u> *sua sponte* and Plaintiff is <u>WARNED</u> that further attempts to seek judicial review or intervention concerning child custody, visitation, or support matters arising out of the Middlesex Probate and Family Court may result in the imposition of sanctions against him. Additionally, the Court <u>CERTIFIES</u> that any appeal of this Order would not be taken in good faith.

BACKGROUND

On December 21, 2010, Plaintiff Michael DeFeudis ("DeFeudis"), of Holliston, Massachusetts, filed a self prepared "Emergency Motion for Complaint," along with a number of attachments. DeFeudis sues various individuals, including his ex-wife (Nancy DeFeudis), her attorneys, four judges of the Middlesex Probate and Family Court in Cambridge, Massachusetts ("Family Court"),[1] and alleged unidentified co-conspirators John and Jane Does. DeFeudis, apparently aware from his prior unsuccessful attempts to obtain relief from domestic orders of the Family Court in connection with child support, custody, and/or visitation matters,[2] contends

---

[1] These include Judges Kenny, Langlois, McSweeney, and Rocket.

[2] <u>See</u> <u>DeFeudis v. DeFeudis</u>, C.A. 06-11451-RGS (remanded case attempted to be removed from state court by DeFeudis in connection with parental right determinations by

that the instant action does not raise domestic relations issues. Rather, he attempts to obtain federal court review by alleging the denial of equal access to the courts, equal protection of the law, and gender bias (*i.e.*, alleging that the Family Court favors women over men in child support, custody, and visitation matters).

DeFeudis's pleadings are not organized or entirely coherent. From what can be discerned, he contends that the Family Court rendered a Judgment on December 8, 2010 with respect to his child visitation rights. He alleges that there was no compliance with the Judgment and/or that the Judgment contains errors. He further contends that he made several motions in the Family Court for expedited relief to allow him to reunite with his two sons, but he has been refused a hearing in the Family Court and neither the judges nor the clerks would respond to his motions. He asserts that he has been denied "equal time" to establish his complaint; and that this is not an isolated incident, but rather the violations began in 2006 and at various times thereafter. While not entirely clear, it appears that DeFeudis also complains of the state court's actions with respect to his arrest on contempt (occurring at the Family Court) for violation of a domestic abuse/§ 209A restraining order, and charges for resisting arrest.[3]

DeFeudis seeks compensation for the time lost with his sons in the amount of $95,000.00

---

judges of the Family Court). His appeal was dismissed on December 21, 2006 (Mandate, Docket No. 10). See DeFeudis v. DeFeudis, No. 06-2451 (1st Cir. 2006).

[3]On January 5, 2011, DeFeudis filed a number of Exhibits in support of his case. Included in those exhibits was a brief by his defense counsel challenging the validity of his criminal conviction for contempt and resisting arrest, stemming from an incident where DeFeudis appeared in Family Court for a hearing, and handed his ex-wife and her attorney papers, indicating that they had been served. Thereafter, the police were contacted (there is a dispute about how all of this came about), and he was arrested. See Exhibit, Docket No. 6-2 (Memorandum in Support of Application for Further Appellate Review in Commonwealth v. DeFeudis, Supreme Judicial Court no. (no number); Appeals Court No. 2009-P-292.

per year for each child, for every year since 2006 (when Judge Stearns remanded <u>DeFeudis v. DeFeudis</u>, C.A. 06-11451-RGS). He also seeks to have fines assessed to the judges of the Family Court and its employees.

Along with his Emergency Complaint (Docket No. 1), DeFeudis filed a Motion for Contempt (Docket No. 3), and a Motion for Leave to Proceed *in forma pauperis* (Docket No. 4). The Motion for Contempt (Docket No. 3) appears to be styled as a Complaint as well, and seeks an Order that all child support arrearages be "erased" and that he be reimbursed for payments. He also contends that he has not received any collateral representing his share of the family assets and "is considering civil suit upon all those who prevent him from enjoying family assets he assisted in amassing during his 15 year marriage + 2 year cohabitation." Motion for Contempt (Docket No. 3 at 2). He further argues that his ex-wife has made no attempts to provide schedules or availability of the children, and therefore she is in violation of the Judgment for Visitation issued December 8, 2010. He argues that it is the responsibility of the Court to provide his children to him for visitation rights and seeks an Order from this Court rectifying this situation immediately.

On December 22, 2010, this Court entered an Electronic Order denying DeFeudis's Emergency Motion (Docket No. 1) and Denying his Motion for Contempt (Docket No. 3). This Court granted DeFeudis's Motion for Leave to Proceed *in forma pauperis* (Docket No. 4), but directed that no summonses would issue pending preliminary screening of this action pursuant to 28 U.S.C. § 1915(e)(2).

On January 5, 2011, DeFeudis filed a number of Exhibits, including the Family Court docket sheet concerning his divorce proceedings and related matters, Family Court pleadings,

and the Memorandum of Law in connection with his request for Further Appellate Review of his criminal conviction for contempt and resisting arrest.

## DISCUSSION

I.     Preliminary Screening of the Complaint

Because DeFeudis is proceeding *in forma pauperis*, his Complaint is subject to screening under 28 U.S.C. § 1915(e)(2). This statute authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2); Denton v. Hernandez, 504 U.S. 25, 32-33 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989). Complaints filed *in forma pauperis* may be dismissed *sua sponte* and without notice under §1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. See Denton, 504 U.S. at 32-33. In addition to the statutory screening requirements under § 1915, this Court has an independent obligation to inquire, *sua sponte,* into its own subject matter jurisdiction.[4]

In conducting this review, the court liberally construes DeFeudis's Complaint because he is proceeding *pro se.* See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).

---

[4]McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). See In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.").

4

Upon review of DeFeudis's allegations, however, this court finds that this action must be dismissed *sua sponte* for the reasons set forth below.

II.  Lack of Good Faith in Filing Suit, and  Absolute Judicial Immunity as Bar to Claims Against Judges

Although DeFeudis couches his Complaint in terms of the denial of due process by the state courts, denial of equal access, and other phrases of this ilk, this case essentially boils down to his challenges to the Family Court proceedings with respect not only to his visitation rights, but to past Orders in connection with child support and distribution of marital assets.  It is crystal clear here that DeFeudis's allegations are hyperbolic, conclusory, and vexatious in nature, and are not based on any underlying facts in support.  His resort to this Court to obtain relief he cannot get in the Family Court cannot be sanctioned.

The Court considers that there was no *bona fide* basis in the assertions of constitutional violations at the time of filing of this action, as is evidenced by the Order on DeFeudis's Motion for Reconsideration issued on December 20, 2010  by Justice William F. McSweeny III of the Family Court, <u>entered the day before the filing of the instant</u> action, thus belying any assertion that the Family Court refuses to hear his complaints.  That Order addresses documents filed by DeFeudis as a request for reconsideration, and denies relief.  The Order sets the relevant background of the Family Court case, and states, in part:

> It is difficult, if not possible, for the Court to respond to each and every allegation contained in the submission filed by the plaintiff.  Virtually all of the assertions lie outside of the scope of the most recent Judgments are, therefore, barred by both the substantive law of the Commonwealth and the Massachusetts Rules of Domestic Relations Procedure....Finally, the document cites motives and conspiracies between third parties....
>
> At no time has [t]he Court denied the Plaintiff's right to access to this Court or to due process.  Even a casual review of its lengthy and extensive docket will

confirm this fact. It appears to the Court that the plaintiff is confusing "access to justice" with the conditions imposed upon him by the Court's most recent judgment of modification relative to his access to his children. The Judgment, in no way, limits his due process rights. Rather, the Court determined, after hearing the evidence that the best interests of the plaintiff's children required that there be a relatively brief period (six months) of limited, unsupervised access to his children. The Court entered this Judgment in light of the plaintiff's apparent continued inability or unwillingness to abide by and cooperate with other methods of allowing access to his children. These have included a so-called visitation center, which eventually also declined to provide services and a private visitation supervisor who also eventually declined to serve.

In entering the Judgment of Modification (which the Court notes was received by the plaintiff some nine (9) days after trial), the Court was attempting to facilitate a new plan for parent-child contact which might lead, prospectively, to contact normalization. This case has had, however, a lengthy history, and the Court approaches the issues without sanguinity and with serious concerns. It was, and remains, the Court's hope, notwithstanding this, that during the brief six-month period enunciated by the Judgment, the plaintiff will comport himself appropriately and re-establish healthy relationships with his children. In short, the Modification Judgment's goal was not to punish the plaintiff in any way but to further the best interests of his children while facilitating his rights as a parent.

Finally, the Court must take a moment to express its concern regarding the behavior of the plaintiff since the entry of the most recent Judgment. These behaviors have included numerous telephone calls to Court staff (clerks, divorce department, personnel and secretaries) demanding immediate attention in a bellicose and belligerent manner. In addition, the plaintiff has, apparently, appeared at the courthouse on several occasions demanding to see Judges (when no matter is pending thus attempting ex parte communication with the Court) and, generally, hectoring court personnel. While the Court is not aware of any behavior which might be construed as threatening, it is sufficient enough to note that some of the conduct has been both off-putting and intimidating to court personnel. It is the Court's hope that the plaintiff will forthwith cease and desist from engaging in such behavior.

Order on Motion for Reconsideration, dated December 20, 2010 in <u>Michael DeFudis [sic] v.</u>

<u>Nancy DeFudis [sic]</u>, Docket No. 04D2336 (Middlesex Probate and Family Court) (Docket No.

6-4).⁵

Next, further evidence of a lack of good faith in bringing this action can be inferred from the fact that Judge Stearns previously outlined the basis for this Court's lack of jurisdiction to review domestic relations matters, in connection with DeFeudis's attempt to remove his divorce case from Family Court to this Court in 2006.  See discussion, *infra.*  DeFeudis is well-aware of Judge Stearns's opinion, as he references it a number of times in his pleadings.

Finally, of particular significance in concluding that DeFeudis's Complaint lacks good faith is the fact that Judge Stearns previously advised DeFeudis that judges are entitled to absolute judicial immunity from suit for actions within the scope of their judicial authority.  See DeFeudis v. DeFeudis, C.A. 06-11451-RGS, Memorandum and Order (Docket No. 11 at footnote 8, citing to Pierson v. Ray, 386 U.S. 547, 553-554 (1967) and Allard v. Estes, 197 N.E. 884, 886 (1935).  In light of this, DeFeudis's assertions of claims against four state judges -- three of which were sued in the 2006 action -- is deemed to constitute malicious, vexatious, or abusive conduct.  See e.g., Fennick v. Sanders, et al., C.A. 09-10377-MLW (Memorandum and Order for Dismissal (Docket No. 6) entered May 27, 2009 imposing sanctions for, *inter alia*, the reassertion of claims against a judge despite the dismissal of a prior claim against the judge based on absolute judicial immunity; dismissing under both 28 U.S.C. § 1915(e)(2)(B)(ii) (failure to state a claim) and § 1915(e)(2)(B)(iii) (frivolous and malicious suit).

In any case, whether or not DeFeudis possessed good faith in bringing the claims against

---

⁵The Court may take judicial notice of the Order of other judges.  Rodi v. S. New Engl. Sch. of Law, 389 F.3d 5, 19 (1st Cir.2004) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.") (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990))).

7

the four state judges named in the Complaint (McSweeney, Langlois, Kenny, and Rocket), the claims as presented -- seeking that the judges be assessed fines -- are not legally cognizable. Again, absolute judicial immunity protects judges from acts performed within the scope of their jurisdiction. Mireles v. Waco, 502 U.S. 9, 11 (1991) (*per curiam*) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damage.").[6] In this case, although DeFeudis may believe that the Family Court judges erred in their rulings or in failing to grant him immediate injunctive relief, there is no reasonable or credible allegation, nor could there be, that the actions or inactions of any of these judges were taken outside the scope of their jurisdiction. Thus, even if these judges erred in their decisions, or delayed matters, or acted negligently or maliciously, their actions or inactions would not constitute the type of extra-judicial activity exempting them from entitlement to absolute judicial immunity.[7]

---

[6]The reason for recognizing this form of immunity is that:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 768 (3d Cir. 2000) (quoting Forrester v. White, 484 U.S. 219, 226-27 (1988)).

[7]As an additional matter, although DeFeudis names his ex-wife and her attorneys as Defendants in this action, his complaints raising federal constitutional violations stem from the alleged failure of the judges and clerks to rule on his motions for relief. While he alleges that his ex-wife failed to comply with Orders of the Family Court, he fails to assert any factual grounds that would invoke federal civil rights claims by these private individuals. There is nothing in the

III.     Abstention and the Domestic Relations Exception as Bar to Claims

Finally, as DeFeudis also knows from Judge Stearns's Memorandum and Order in 2006, this Court lacks jurisdiction to review matters that are pending in the Family Court, that relate to disputes over parental rights and child support, as those involve matters of domestic relations.[8] The premise behind the domestic relations exception is that federal courts should not interfere in domestic disputes, including disputes over marital property or the custody of children/parental rights, because state courts have developed the proficiency and specialized resources necessary to handle such cases.

The Supreme Court firmly articulated and clarified the domestic relations exception in Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). The Ankenbrandt Court held that "the domestic relations exception, as articulated by this Court ... divests the federal courts of power to issue divorce, alimony, and child custody decrees." Id. at 703. The rationale underlying this holding is that "state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." Id. at 704. The First Circuit has constantly adhered to the exception. See Sutter v. Pitts, 639

---

Complaint from which this Court could infer state action by his ex-wife or her attorneys, and thus the claims are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

[8]A federal court must abstain from reaching the merits of a case over which it has jurisdiction so long as there is: (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding (or, at least, instituted prior to any substantial progress in the federal proceeding); that (2) implicates an important state interest; and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit. See Brooks v. New Hampshire Supreme Court, 80 F.3d 633 (1st Cir. 1996) citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

F.2d 842, 843 (1st Cir. 1981) ("It is firmly established that the federal courts do not have diversity jurisdiction to grant divorces, determine alimony and support obligations, or resolve conflicting claims of divorced parents to the custody of their children."); Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) ("[The domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees.").

There is no question in these actions that DeFeudis is seeking to put before this Court matters relating to child custody or visitation rights, as well as matters regarding child support obligations (*i.e.*, to order his arrearages vacated), and even matters concerning distribution of marital assets. Were this Court to exercise jurisdiction, it would require this Court to investigate, *inter alia*, the needs of the children as well as DeFeudis's current capabilities as a family provider. This Court lacks the power and the resources of the state probate and family courts to best serve the family interests.

The presence of family-related matters in these cases argues strongly for the propriety of total abstention. Under First Circuit law, abstention may be broadly construed to apply not only to the divorce, marital property and child custody claims themselves, but also to other claims arising from what are essentially domestic relations matters. "The First Circuit has stated that even if a case is not strictly fit for the application of the domestic relations exception, principles of comity wold still make abstention appropriate." Mojica v. Nogueras-Cartagena, 573 F. Supp. 2d 520, 523 (D. P.R. 2008) (citing Armstrong v. Armstrong, 508 F.2d 348 (1st Cir. 1974) (In a case where the parties -- former spouses -- disagreed as to the interpretation of a divorce decree, the First Circuit stated that "in any event it is a case as to which sound federal policy as well as comity dictates abstention.")); see also Sutter, 639 F.2d at 843 ("[A]lthough the exception has

been narrowly confined, we and other courts of appeals, have held that federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception."); see LaMontagne v. LaMontagne, 394 F. Supp. 1159, 1169 (D. Mass. 1975) (holding that reasons of comity and common sense made abstention appropriate where, although father of minor child sued mother, probation officers and others alleging violation of Eighth and Fourteenth Amendment rights, the action was essentially a domestic relations contest).[9]

Accordingly, for all the reasons set forth above, this action is DISMISSED *sua sponte*.

IV.     Warning Regarding Sanctions

In view of the above, and the fact that this is not DeFeudis's first attempt at federal court review of domestic relations matters arising out of the Family Court, this Court considers that DeFeudis has engaged in frivolous and vexatious[10] conduct in filing this action. Accordingly, DeFeudis is hereby WARNED that any further attempts to have this Court review matters stemming from the Middlesex Probate and Family Court that involve matters of child support or parental rights, and any suits against judges of that court based on the action or inaction in connection with a case, will result in the imposition of sanctions against him, including monetary

---

[9]As an additional matter, DeFeudis has not set forth any facts from which this Court could find that he lacks an adequate state remedy to contest the actions or inactions of state judges of the Family Court.

[10]Vexatious conduct occurs where a party's actions are frivolous, unreasonable or without foundation. Local 285, Service Employees Intern. Union v. Nonotuck Resource Assoc., Inc., 64 F.3d 735, 737 (1st Cir. 1995). Subjective bad intent is not necessary to justify a sanction for vexatious conduct, id., and bad-faith behavior in this context is equivalent to bringing suit on a frivolous claim, meaning a claim that no reasonable person could suppose to have any merit. Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000). Such is the case here. No reasonable person could suppose that any of DeFeudis's due process claims (based on the alleged refusal of the Family Court to hear his complaints) to have any merit.

sanctions and/or an order enjoining him from further filings in this Court absent prior permission of the Court, pursuant to Rule 11 of the Federal Rules of Civil Procedure and pursuant to this Court's inherent authority to impose sanctions.[11]

V.     Certification That Any Appeal Taken Would Not Be In Good Faith

Pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24(a)(3)(A), the Court finds, and hereby CERTIFIES, that any appeal by DeFeudis of the matters contained in this Memorandum and Order would not be taken in good faith. Such a certification prohibits *in forma status* on appeal even though DeFeudis has been found to be indigent. For the reasons set forth in this Memorandum and Order, this Court finds that any appeal would be one that plainly does not

---

[11]This Court has authority to impose sanctions on a *pro se* party if he submits a pleading for an improper purpose or if the claims within it are frivolous or malicious. See Fed. R. Civ. P. 11(b)(1),(2); Eagle Eye Fishing Corp. v. U.S. Department of Commerce, 20 F.3d 503, 506 (1st Cir. 1994) (*pro se* parties, like all parties and counsel, are required to comply with the Federal Rules of Civil Procedure); Pronav Charter II, Inc. v. Nolan, 206 F. Supp. 2d 46, 53 (D. Mass. 2002) (Rule 11 applies to *pro se* litigants) (citation omitted). Rule 11 exists, in part, to protect defendants and the Court from wasteful, frivolous and harassing lawsuits, and provides for sanctions as a deterrent. See Navarro-Ayala v. Nunez, 968 F.2d 1421, 1426 (1st Cir. 1992). Additionally, a district court has the inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad-faith, vexatious, wanton or oppressive behavior. See Chambers v. NASCO, Inc., 501 U.S. 32, 46-50 (1991); accord United States v. Kouri-Perez, 187 F.3d 1, 6-8 (1st Cir. 1999) (same); John's Insulation, Inc. v. L. Addison and Assocs. Inc., 156 F.3d 101, 109 (1st Cir. 1998) (district court did not abuse its discretion in ordering dismissal of complaint and default judgment as a sanction for plaintiff's protracted delay and repeated violation of court's order under inherent powers rather than Rule 41); Alexander v. United States, 121 F.3d 312, 315-316 (7th Cir. 1997) (sanctioning inmate in the amount of $500 pursuant to court's inherent authority for repetitious, meritless litigation). This inherent authority includes the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation. Elbery v. Louison, 201 F.3d 427 (1st Cir. 1999) (*per curiam*) (citing Cok v. Family Court of Rhode Island, 985 F.2d 32, 34 (1st Cir. 1993) for the proposition that "[f]ederal courts... possess discretionary powers to regulate the conduct of abusive litigants" and Castro v. United States, 775 F.2d 399, 408 (1st Cir. 1985) (*per curiam*) for the power to enjoin a party from filing frivolous and vexatious lawsuits pursuant to such authority)).

deserve additional judicial attention.

Should DeFeudis seek permission to appeal *in forma pauperis*, he must do so directly from the Court of Appeals.

## CONCLUSION

In light of the foregoing it is hereby Ordered that:

1. This action is <u>DISMISSED</u> *sua sponte;*

2. Plaintiff is <u>WARNED</u> that further attempts to seek judicial review or intervention concerning child custody, visitation, or support matters arising out of the Middlesex Probate and Family Court may result in the imposition of sanctions against him; and

3. Pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24(a)(3), this Court <u>CERTIFIES</u> that any appeal taken by the Plaintiff would not be taken in good faith.


SO ORDERED.

        <u>/s/ George A. O'Toole, Jr.</u>
        GEORGE A.O'TOOLE, JR.
        UNITED STATES DISTRICT JUDGE

DATED: January 13, 2011